November 20, 1915. The opinion of the Court was delivered by
The sole question in this case is whether the act of 1915, 29 Stat. 140, prohibits a common carrier from delivering a shipment of grain alcohol to a wholesale druggist to be used for lawful purposes.
Prior to the passage of this act, the sale and consumption of alcoholic liquors within the State, was regulated by the provisions of chapter XXIX, section 794 to 878, inclusive, of the Criminal Code of 1912. The Courts had declared that citizens of the State had the right to import liquors for personal use without restrictions, because it was an article of interstate commerce, and its importation for lawful use could not be interfered with by State legislation, but was subject only to the legislative power vested in the Congress by the Federal Constitution. The right of importation for personal use, being practically unlimited, was used by violators of the law to cloak importations for unlawful sale.
In 1913, Congress passed an act, commonly known as the Webb-Kenyon Act, which prohibits the transportation in interstate commerce into any State of liquor, of the kind therein mentioned, which is intended to be used in violation of any law of such State. It was supposed that, as a result of this act of Congress, the State legislature could lawfully regulate the importation of such liquors in the manner prescribed by the act of 1915, entitled "An act to regulate the shipment of spirituous, vinous, fermented or malt liquors or beverages into this State, and to provide penalties for the violation of this act."
Section 1 of the act makes unlawful the transportation of such liquors, either into or within the State, or the delivery or receipt or possession thereof for personal use, "except as hereinafter provided." Section 2 permits any person to order and receive from without the State for his own personal *Page 497 
use, not exceeding one gallon of such liquors in each calendar month. Section 3 prohibits carriers from delivering any package containing such liquors to any person other than the consignee, and exempts them and their agents from liability for damages for nondelivery thereof, until the consignee appears in person at their place of business and signs in person for it. Section 4 prohibits any person from obtaining and the agent of any carrier from delivering any such package under any false or fraudulent pretext. Section 5 prohibits the storing or keeping of any liquors imported under the act elsewhere than in the home or private room of the person ordering the same. Section 6 makes the provisions of the act inapplicable to shipments to or from authorized dispensaries. Section 7 provides penalties for violations of any provision of the act. Section 8 reads: "Nothing herein contained shall prevent the sale or transportation of alcohol under, and in accordance with, the statutes of this State, as contained in Criminal Code of 1912, sections 799, 800, 802 to 812, inclusive."
Briefly stated, section 794 of the Criminal Code of 1912 prohibits the sale of intoxicating liquors, "except as hereinafter provided." Section 795 provides for the sale of alcohol by wholesale druggist to certain consumers for certain purposes specified and prescribes the manner and conditions of such sales. Section 796 makes provision for the sale of alcohol for certain purposes by retail druggists. Sections 797 and 798 provides for the sale by retail druggists of alcohol for medicinal purposes upon physicians' prescriptions. Section 799 provides for the sale of alcohol by retail druggists for use in the arts and for scientific and mechanical purposes. Section 800 provides for a statement by the purchaser of alcohol, purchased under the provisions of section 799 and the filing thereof by the druggist with the clerk of Court. Section 802 provides for the filing with the clerk of Court of all statements required by section 795 to 803, inclusive. The statements required by section 795 relate to *Page 498 
sale of alcohol by wholesale druggists. Section 811 provides penalties for the violation of section 794 to 803, inclusive, and section 812 provides penalties for the violation by any druggist or physician of the provisions of sections 794 to 803, inclusive.
It will be seen from the foregoing statement of the existing law and the act of 1915, that, but for the particular reference in section 8 of the act of 1915 to "sections 799, 800, 802 to 812, inclusive," of the Criminal Code and the omission from that reference of section 795, there would be no doubt or difficulty. For, otherwise, it clearly appears that the purpose of the act of 1915 was merely to restrict the right to import intoxicating liquors for personal use, and in no other way to modify the existing law. It contains no repealing clause, nor any direct expression of intention to repeal or modify the existing law in any particular other than that pointed out, and in no other respect does it conflict with the law existing at date of its passage.
The case turns, then, upon the construction of section 8, and the question whether the ambiguity which is raised by the reference therein to the particular sections of the Criminal Code mentioned, and the exclusion from that reference of section 795, which provides for the sale of alcohol by wholesale druggists, shall have the effect of repealing, by implication, section 795.
No doubt the maxim, "expressio unius est exclusioalterius," is helpful as a rule of construction, but it is not inflexible, and it should be applied, as all other rules of construction, as a means of ascertaining the legislative intention, and it should not be allowed to have the effect of defeating that intention which is otherwise plainly discovered. In this case, the exclusion of section 795 in the reference to the Criminal Code, raises only a feeble implication, which is at least partially, if not wholly, rebutted by the inclusion of its provisions in the other sections expressly referred to. Besides this, repeals by implication are not *Page 499 
favored. Where the intention to repeal is not expressed, the presumption is against such an intention. All things considered, the conclusion is irresistible that the legislature did not intend, by the act of 1915, to interfere with the right of wholesale druggists to handle alcohol under and in accordance with the then existing law.
Judgment affirmed.